UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOSE M. SOSA | ) | Case No. 09-13389-SSM |
| MADELYN DIAZ | ) | Chapter 13 |
| | ) | |
| Debtors | ) | |

**MEMORANDUM OPINION**

Before the court is the objection of Thomas P. Gorman, standing chapter 13 trustee, to confirmation of the plan filed by the debtors on November 18, 2009. The objection challenges the propriety of, and the debtors' good faith in proposing, a plan that pays a child support arrearage being collected by a state agency at only 26 cents on the dollar. A hearing was held on January 13, 2010, at which the debtors were present with their attorney of record. For the reasons stated, confirmation will be denied.

Background

Jose M. Sosa and Madelyn Diaz ("the debtors") are husband and wife. He is a manager for a construction company; she is a bookeeper for a supermarket. They filed a voluntary petition in this court on April 30, 2009, for relief under chapter 7 of the Bankruptcy Code. On their schedules they reported $37,117 in priority child support claims, $49,352 in general unsecured claims, take-home pay of $4,998 a month, and living expenses of $5,687 a month. Following the meeting of creditors, the trustee filed a report of no distribution. The debtors then filed a motion to convert their case to chapter 13, and an order converting the case was entered on

1

September 2, 2009.  Following the conversion, they filed amended income and expense schedules reporting monthly take-home pay of $5,296 and monthly living expenses of $5,192, leaving $104 per month to fund a chapter 13 plan.  Among the reported expenses is $500.00 per month in child support that the debtor represented at the confirmation hearing that he is voluntarily paying to the child's mother.

After their initial plan was denied confirmation, the debtors filed on November 18, 2009, the plan that is presently before the court.  It requires the debtors to pay the chapter 13 trustee $104 per month for 60 months, for a total of $6,240.  From the payments received, the trustee would pay his own statutory compensation of 10% and a $37,117 domestic support obligation to the County of San Bernardino, California.  General unsecured creditors would receive nothing.  Regular contract payments on the first and second deeds of trust against their residence would be made directly by the debtors.  A separate adversary proceeding would be brought to avoid ("strip off") a third deed of trust against the residence as wholly unsecured.

A proof of claim has been filed by San Bernardino DCSS [Department of Child Support Services] ("San Bernardino") in the amount of $21,274.44 for amounts due as a domestic support obligation.  A report attached to the proof of claim reflects the "CP" (presumably "custodial parent") as Darlene Martinez and references a court order only by number, and not by date or the name of the court. The "current charges" run from December 1999 through October 2004, during which only sporadic payments plus two tax refund interceptions are credited against the account.  After an adjustment the following month, the balance stood at $45,782.  Beginning in November 2005 and continuing through October 2009, there are, in addition to three tax refund intercepts, monthly credits which—because they vary somewhat and are not in whole dollar amounts—the

court assumes came from a wage garnishment, although no such garnishment is reported on the Statement of Financial Affairs in response to Question 4B. No evidence was presented as to whether the payments were being forwarded to the custodial parent or were retained by the State of California as recoupment of welfare payments.

## Discussion

The trustee's objections are two-fold: he contends that the plan fails to pay the filed priority claim of San Bernardino in full as required by § 1322(a)(2), Bankruptcy Code, and that even if payment in full is not required, the plan has not been proposed in good faith since its sole apparent purpose is to hold the child support creditor at bay for five years with only token payments during that period while the debtors pursue a plan whose primary purpose is to provide a vehicle for stripping off the third deed of trust against their property.

### A.

With respect to the first issue, although unsecured claims may be compromised by a chapter 13 plan in certain circumstances, claims entitled to priority under § 507 of the Bankruptcy Code must, with one exception relevant to the present case, be paid in full. § 1322(a)(2), Bankruptcy Code. Priority claims include claims for "domestic support obligations." *Id.* § 507(a)(1). Domestic support obligations include debts for child support that accrue before, during, or after the order for relief in a bankruptcy case that are owed either to the child's parent or to a government unit, if the obligation was established by a separation agreement, divorce decree, property settlement agreement, order of a court of record, or determination by a governmental unit. *Id.* §101(14A). Child support that is owed to or recoverable by the parent has priority over child support that has been assigned to, or is owned

3

directly to or recoverable by, a government unit. *Id.* § 507(a)(1)(A), (B). An assigned claim is not subordinated, however, if it is "assigned voluntarily . . . for the purpose of collecting the debt." *Id.* § 507(a)(1)(B). The distinction is important in this case because an exception to the requirement for full payment of priority claims exists for subordinated domestic support claims that fall under § 507(a)(1)(B). Specifically, a chapter 13 plan may provide for less than full payment of such claims if the plan provides that all of the debtors' projected disposable income for 5 years will be applied to make payments under the plan. *Id.* § 1322(a)(4). There is no free lunch, however: any amount not paid at the conclusion of the plan is not discharged and may still be collected from the debtor. *Id.* § 1328(a)(2).

B.

From the foregoing discussion, it is clear that a plan may provide for less than full payment of an assigned child support claim, provided that the plan extends for at least 60 months, which this plan does, and provided the debtors are applying their projected disposable income to payments under the plan, which the trustee does not dispute. The issue, then, boils down to who has the burden of proof as to whether an assigned child support claim was or was not voluntarily assigned for collection? Since the general rule is that assigned claims have a lower priority, and since the exception for claims voluntarily assigned for collection is grammatically a proviso, the court is inclined to place at least the initial burden of producing evidence on the objecting party, here the trustee. Since the trustee has produced no evidence that the support claim was voluntarily assigned by the mother for the purpose of collection, and since the filed proof of claim sheds no light on the issue, the court concludes that the plan is not unconfirmable simply because it does not pay the support arrears in full.

4

C.

Of course, the party with the best information as to the legal status of the claim would be the San Bernardino DCSS—which in turn squarely raises the issue of whether the plan properly notified San Bernardino that the debtors did not propose to pay its claim in full. Put another way, San Bernardino may not have seen a need to object to confirmation, since the plan appears, at least on a quick reading, to provide for full payment. Specifically, the plan lists a priority claim to "County of San Benardi[no] for "Domestic support obligations" in the estimated amount of $37,117, with the "Payment and Term" being shown as "Prorata 60 months." It is only when one does the arithmetic that it becomes apparent that the claim will not be paid in full. From the total plan funding of $6,240 would be deducted the trustee's commission of $624, leaving only $5,616 for payment of the filed $21,274.44 child support claim, or approximately 26 cents on the dollar.

To be sure, the standard form of chapter 13 plan in the Eastern and Western Districts of Virginia does not make ready provision for the special treatment under § 1322(a)(4) of assigned domestic support obligation claims. But it is possible to fill out the form plan in a way that provides meaningful notice to the child support enforcement agency. That is, in Section 2-B, dealing with priority claims, the column for "Payment and Term" should, in this case, have stated something to the effect "$5,616 over 60 months," with a cross-reference to Section 11. In turn, Section 11 ("Other provisions of this plan") could have provided, "As permitted by § 1322(a)(4) less than full payment of the § 507(a)(1)(B) priority claim of San Bernardino DCSS is being made through the plan." The plan would then have clearly notified San Bernardino of the intended treatment of its claim and of the need—if indeed the claim was voluntarily assigned for

5

the purpose of collection—to object to confirmation. But as things now stand, the court cannot find that the plan gave San Bernardino meaningful notice of how its claim would be treated.

D.

In addition to meeting the technical requirements for confirmation, a chapter 13 plan must also have been proposed in good faith. *Id.* § 1325(a)(3). The Fourth Circuit has held that there is no requirement of "substantial" payment in a chapter 13 case, and that totality of the circumstances is the appropriate test when a debtor proposes no or only minimal payment of claims. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982). A non-exclusive list of factors to be considered include "the percentage of proposed repayment, . . . the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." *Id*. at 972. Other than the long period during which the child support agency would be held at bay while receiving payments of only approximately $94 a month (probably not enough to even cover accruing interest), the trustee has not pointed to any particular indicia of bad faith. But there are unanswered questions arising from the initial filing of this case under chapter 7 that suggest that the principal or even sole motivation for converting to chapter 13 was simply to get San Bernardino off Mr. Sosa's back for 5 years, particularly as the debtors do not otherwise appear to need chapter 13 relief in order, for example, to save their house. The court is also troubled by the discrepancy between the report attached to the San Bernardino proof of claim that seems to reflect an on-going support garnishment in the average amount (during the six months leading up to the bankruptcy filing) of $185 per month and the listing in Schedule I of $500 per month being

6

Case 09-13389-SSM    Doc 40    Filed 01/21/10    Entered 01/21/10 17:11:49    Desc Main
                              Document      Page 7 of 7

paid in voluntary child support.  The circumstances are sufficiently unclear that the court would require a further evidentiary hearing to resolve the good faith issue if the plan were otherwise in a position to be confirmed.  But since the present plan cannot be confirmed because it does not provide San Bernardino with adequate notice of how its claim is to be treated, the court will defer consideration of the good faith issue until a modified plan has been filed.

A separate order will be entered denying confirmation.


Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge


Copies to:

Jose M. Sosa
Madelyn Diaz
65 Bickel Ct.
Sterling, VA 20165-5728
Debtors

Lois Ilaine Upton, Esquire
Robert A. Ades & Associates PC
5419-B Backlick Road
Springfield, VA 22151
Counsel for the debtors

Thomas P. Gorman, Esquire
300 N. Washington St., Suite 400
Alexandria, VA 22314
Chapter 13 Trustee